# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANCIS NELSON,             :
      Plaintiff,                :
                                :        CIVIL ACTION
      v.                           :        NO. 07-2622
                                :
MICHAEL J. ASTRUE,         :
      Commissioner of Social Security    :
      Administration, Defendant.       :

## Memorandum and Order

YOHN, J.                                                     August \_\_\_\_, 2008

      Plaintiff, Francis Nelson, appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383, for the period subsequent to January 31, 2001.  The Commissioner determined that Nelson was disabled only during the closed period from March 10, 1997 through January 31, 2001, and not thereafter.  I referred the matter to a magistrate judge, who submitted a Report and Recommendation recommending that I grant the Commissioner's motion for summary judgment and enter judgment in favor of the Commissioner.  Nelson has filed objections to the Report and Recommendation.  For the following reasons, I will adopt the magistrate judge's Report and Recommendation and grant the Commissioner's motion for summary judgment.

## I.       Factual and Procedural Background

      On September 24, 1996, diesel fuel spilled on Nelson while he was working at the

Philadelphia International Airport.  (App. 119-20.)  He filed an application for SSI on March 10,

1997, claiming disability beginning on September 25, 1996.  (App. 69-70.)  His claimed

disability results from the following alleged impairments:  asthma; back, leg, and knee pain;

posttraumatic stress disorder; and depression.  (App. 497.)  His initial request for disability and

his request for reconsideration were denied.  (App. 43-46, 48-50.)  Nelson then requested and

received a hearing before an ALJ, held on July 14, 1998.  (App. 63, 66.)  At the hearing, Nelson

was represented by attorney Thomas Sutton.  The ALJ vacated the denial of his request for

reconsideration and remanded the case "for evaluation of the mental disorder, including

completion of the standard document . . . and a revised reconsideration determination."  (App.

58.)  The Social Security Administration then reviewed additional information about Nelson's

impairments, including a report dated July 23, 1998 from his treating psychiatrist, Dr. Jay

Bonovitz, and again denied Nelson's SSI application.  (App. 59-61.)  Nelson had another hearing

before a different ALJ on July 26, 1999.  At that hearing, Nelson; his mother; Dr. William

Clovis, a medical expert; and Lee Levin, a vocational expert, testified.  (App. 492-569.)  The

ALJ found on September 22, 1999 that Nelson was "not disabled and has not been disabled for

any time relevant to this decision."  (App. 17.)

Nelson then requested review by the Appeals Council.  (App. 12.)  After receiving

additional evidence from Nelson, the Appeals Council denied Nelson's request for review.  (App.

6, 8.)  Thus, the ALJ's September 22, 1999 decision stood as the final decision of the

Commissioner.  (App. 6.)  Nelson then challenged the denial of his SSI claim in this court, and

both parties filed motions for summary judgment.  On August 30, 2002, I adopted the magistrate

judge's report and recommendation and remanded the case to the Commissioner for proper

evaluation of the medical evidence and for a full explanation of the ALJ's analysis of that evidence.  (App. 629.)

On December 11, 2003, another hearing was held before the second ALJ.  Nelson was again represented by Sutton, and Dr. Hillel Rawclaw, a clinical psychologist, testified as a medical expert.  (App. 796-844.)  Ultimately, Sutton asked the ALJ to consider a closed period of disability, from March 1997 through January 5, 2001.  (App. 840-43.)  After asking Rawclaw for his opinion regarding the closed period from March 1997 to January 2001, the ALJ took the case under advisement and closed the hearing.  (App. 842-44.)  The ALJ issued a "fully favorable" decision on January 26, 2004, having determined that Nelson was disabled by posttraumatic stress disorder during the period from March 10, 1997 through January 31, 2001.  (App. 613, 617.)  The ALJ also specifically found that Nelson's mental impairment had improved such that he was no longer disabled as of the end of January 2001:  "Since January 2001, the . . . claimant's mental impairment no longer has met the requirements of Appendix 1, his impairment has medically improved, and his medical improvement relates to his ability to work."  (App. 621.)

Nelson then filed a pro se request for review with the Appeals Council.  (App. 612.)  Sutton apparently submitted records to the Appeals Council.  (*See* App. 609 ("Your representative submitted the records from The Wedge Medical Center dated November 21, 2003.").)  The Appeals Council denied Nelson's request for review, and the ALJ's January 26, 2004 decision stood as the final decision of the Commissioner.  (App. 608-09.)

On June 27, 2007, Nelson sought judicial review of the Commissioner's decision in this court, alleging that his agreement to a closed period of disability was not knowingly made, that he is permanently disabled, and that pertinent medical records were not before the ALJ.  He

submitted copies of the medical records he alleges demonstrate his ongoing disability.  The

Commissioner filed an answer on August 30, 2007; Nelson filed a reply on October 9, 2007; and

the Commissioner filed a response on November 8, 2007.  I referred the case to the magistrate

judge, who treated Nelson's reply as a Request for Review and the Commissioner's response as a

Response to Request for Review and motion for summary judgment.  On January 28, 2008, the

magistrate judge issued a Report and Recommendation recommending that Nelson's request for

review be denied and the Commissioner's motion for summary judgment be granted.  Nelson

filed his objections on March 7, 2008, arguing that the magistrate judge incorrectly found that the

Commissioner's decision was supported by substantial evidence, overlooked evidence of the

permanence of his disability, and erred by not finding Sutton ineffective.


II.     **Legal Standard**

        A district court reviews de novo the parts of the magistrate judge's report and

recommendation to which the claimant objects.  28 U.S.C. § 636(b)(1)(C).  The district court

may accept, reject, or modify, in whole or in part, the magistrate judge's findings or

recommendations.  *Id.*  In contrast, a district court may not review the Commissioner's decision

de novo.  The court may only review the Commissioner's final decision to determine "whether

that decision is supported by substantial evidence." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d

Cir. 1999) (citing 42 U.S.C. § 405(g)).  "Substantial evidence 'does not mean a large or

considerable amount of evidence, but rather such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Hartranft*, 181 F.3d at 360 (quoting *Pierce v.

Underwood*, 487 U.S. 552 (1988)).  In making this determination, the court must consider "the

evidentiary record as a whole, not just the evidence that is consistent with the agency's finding." *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). The substantial evidence test is "deferential." *Id.* Consequently, the court "will not set the Commissioner's decision aside if it is supported by substantial evidence, even if [it] would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360.

To qualify for SSI payments, a claimant must demonstrate that "there exists a medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). When evaluating a claim for SSI disability payments, the Commissioner applies a five-step sequential analysis. 20 C.F.R. § 416.920; *Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000). The Commissioner considers the following: (1) whether the claimant worked during the alleged period of disability, (2) whether the claimant has a "severe medically determinable . . . impairment," (3) whether the "impairment" meets the requirements of a listed impairment, (4) whether the claimant can continue to perform "past relevant work," and (5) whether the claimant can perform "other work" in the national economy. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proving steps one through four.[1] If the claimant satisfies these requirements, the burden shifts to the Commissioner to show that the claimant is capable of performing "other work." *Sykes*, 228 F.3d at 263.

---

[1] Technically, neither party bears the burden of proving step three "[b]ecause step three involves a conclusive presumption based on the listings." *Sykes*, 228 F.3d at 263 n.2.

III.   **Discussion**

Nelson makes three claims in his objections to the magistrate judge's Report and Recommendation.  First, he insists that he is permanently disabled and that the Commissioner incorrectly found him disabled for only a closed period.  Second, he asserts that new evidence demonstrates that he is permanently disabled.  Third, he argues that Sutton was ineffective for failing to submit certain records of his disability and for failing to appeal.  I will overrule Nelson's objections and adopt the magistrate judge's Report and Recommendation.

Nelson first claims that he is permanently disabled and that the Commissioner erred in not finding him permanently disabled.  The ALJ relied on three medical opinions regarding Nelson's mental impairments to conclude that Nelson was disabled as a result of posttraumatic stress disorder from March 10, 1997 through January 31, 2001.  Nelson's treating psychiatrist, Dr. Bonovitz, previously submitted interrogatories, supported by his treatment notes, in which he indicated that Nelson had "marked limitations in social functioning and marked limitations in concentration, persistence, or pace."  (App. 243-48, 617.)  These interrogatories were based on nineteen forty-five minute sessions between September 17, 1996 and June 12, 1998 and were dated July 27, 1998.  (App. 243, 248.)  Dr. Clovis testified as a medical expert at the July 26, 1999 hearing that Nelson had "moderate limitations in [his] activities of daily living; marked limitations in social functioning; moderate limitations in concentration, persistence, or pace; and one or two episodes of decompensation."  (*Id.*)  Dr. Rawclaw testified as a medical expert at the December 11, 2003 hearing that "based on the interrogatories and treatment notes of Dr. Bonovitz, [Nelson's] mental impairments caused marked limitations [in] concentration, persistence, and pace, but only mild limitations in his activities of daily living and social

6

functioning, and no episodes of decompensation." (*Id.*)  The ALJ noted that as of January 5,

2001, Nelson "still had difficulty with social functioning and attention, concentration, and pace."

(*Id.*)

The ALJ also evaluated the evidence relating to Nelson's physical impairments.  She

noted Nelson's history of breathing problems, his back and neck injuries from an earlier fall, his

diagnosis of lumbrosacral strain and sprain with myofascial pain syndrome, and his diagnosis of

restrictive ventilatory impairment that caused dyspnea.  (*Id.*)  The ALJ did not find that these

impairments caused Nelson to be disabled, but she did find that they caused "significant

limitations in his ability to perform work related physical activities."  (App. 618.)

After considering the testimony and documentary evidence, the ALJ concluded that

Nelson was disabled due to posttraumatic stress disorder during the period from March 10, 1997

through January 31, 2001.  (*Id.*)  The ALJ further found that as of February 1, 2001, Nelson could

work with limitations:  he was "limited to lifting and carrying no more than medium exertion,

and no concentrated or excessive exposure to pulmonary irritants such as dust, odors, and

fumes."  (App. 619.)

Substantial evidence supports the ALJ's conclusion that Nelson was disabled during the

period from March 10, 1997 through January 31, 2001.  More importantly—because Nelson

takes issue only with the Commissioner's conclusion that he was not permanently

disabled—substantial evidence also supports the ALJ's conclusion that Nelson was not disabled

after January 31, 2001, and therefore is not permanently disabled.

The ALJ found that "[t]he evidence shows that [Nelson's] functioning began to

substantially improve" after he reentered mental health treatment in early January 2001.  (*Id.*)

7

Progress notes show that Nelson was being prescribed medications at that time and that he was doing well on the medications. (*Id.*) Nelson was reporting that he was not as depressed as he had been and that the medications were keeping him calmer than he had been and minimizing other symptoms of mental impairment. (*Id.*) By November 2003, the ALJ found that Nelson's records showed his "mental status examination to be essentially normal . . . with a clinical impression that [Nelson] is presently doing well on treatment and is maintaining his stability." (App. 618.) In addition, the ALJ noted that Dr. Rawclaw testified "that the medical records showed substantial medical and functional improvement." (*Id.*) The ALJ thus concluded, with respect to Nelson's mental impairment, that as of February 1, 2001 Nelson "had no limitations in his activities of daily living, moderate limitations in social functioning; no limitations in concentration, persistence, or pace; and no episodes of decompensation." (*Id.*) These conclusions are supported by the testimony and exhibits cited by the ALJ, and Nelson does not point to contrary medical evidence in the record. Therefore, I adopt the portion of the magistrate judge's Report and Recommendation concluding that substantial evidence supports the Commissioner's finding that Nelson is not permanently disabled.

I also adopt that portion of the magistrate judge's Report and Recommendation concluding that remand is not required for the Commissioner to consider additional records submitted by Nelson to this court. Many of those additional records are not "new," and the rest are not "material," as required by 42 U.S.C. § 405(g).

As a general rule, "evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence." *Mathews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). In very limited circumstances, however, a reviewing court may remand a case to

8

the Commissioner for reconsideration in light of the additional evidence.   Specifically, the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. 405(g); *see Melkonyan v. Sullivan*, 501 U.S. 89, 100-01 (1991).  Accordingly, in order to qualify for this remand option, three requirements must be satisfied:  (1) the additional evidence must be "new"; (2) it must be "material" to determination of plaintiff's disability benefits claim; and (3) there must "good cause" for plaintiff's failure to present the new evidence in a prior proceeding.  *See Mathews*, 239 F.3d at 594.  It is the plaintiff's burden to show materiality and good cause.  *See, e.g.*, *id.* at 595; *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir.1996). Nelson's additional evidence, however, fails to satisfy these three required elements.

Additional evidence is "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding."  *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990).  It is not "new" if it is "merely cumulative of what is already in the record."  *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984).  New evidence is "material" for purposes of determining eligibility for remand under § 405(g) if it is "relevant and probative" and there is "a reasonable possibility that the new evidence would have changed the outcome of the [Commissioner]'s decision."  *Id.*

Most of the documents submitted by Nelson to the court are in the administrative record and therefore are not new.  (*See* App. 125-28, 130, 132-40, 142, 144-47, 149-51, 154-69, 182-87, 189-92, 228-31, 233-34, 239-40, 289, 298-303, 305, 375-82, 386, 388-99, 454-55, 690.)  Of the remaining documents, some are not new because they were in existence at the time of Nelson's

hearing before the ALJ.  These documents include a description of the jet fuel spill; a general

medical history dated November 5, 1996; notes of treatment at Mercy Workcare between

September 27, 1996 and November 4, 1996; an undated employer update form from Mercy

Workcare certifying that Nelson is unable to return to work but not describing any of his

symptoms or treatment; a letter from Spinal Education Associates reporting that Nelson

participated in a "Back School program" on November 14, 1996; emergency department records

of Nelson's visit to Elkins Park Hospital on September 19, 1998, during which his swollen uvula

was evaluated; a fax cover sheet accompanying a copy of Nelson's medical records sent by

Nelson to "The Law [F]irm of Allen L. Rothenberg" in October 2000; a fax cover sheet

accompanying Dr. Bonovitz's report, dated July 27, 1998 and sent by Dr. Bonovitz to an

attorney, on which Dr. Bonovitz notes that he "strongly suspect[s] a closed head injury";

"employability assessment" forms completed by Ward and Wahner on September 18, 2000,

September 27, 2000, and September 17, 2001 opining that Nelson is permanently disabled; and

treatment notes from Dynamic Rehabilitation Services, Inc. dated October 7, 1996 through

February 19, 1997.

Nelson has not asserted that these documents were unavailable to him at the time of the

December 11, 2003 hearing or that he has good cause for his failure to submit them to the ALJ.

Moreover, several of these documents relate to the period before March 10, 1997, the date on

which the ALJ found Nelson's disability began.  Other documents relate to the period during

which the ALJ found Nelson disabled and are, therefore, cumulative and immaterial.

The remaining documents are dated after the hearing on December 11, 2003 and therefore

are new.  These documents include pulmonary function analyses from the Germantown Hospital

& Community Health Services Pulmonary Function Laboratory dated November 30, 2004 and

December 8, 2005; a "Patient Follow-Up & PCP Fax Communique" from Penn Jersey

Pulmonary Associates dated November 30, 2004; reports of Nelson's condition and care by Barry

Wahner, D.C., dated May 20, 2005 and May 14, 2007; treatment plans from The Wedge Medical

Center dated February 8, 2007 and October 3, 2007; and copies of prescriptions dated September

29, 2006 and June 8, 2007 and of prescription drug information.

The copies of prescriptions and prescription drug information are not material because

they demonstrate only that Nelson was taking the listed drugs as of September 29, 2006 and June

8, 2007.  The record before the ALJ showed that, during the spring of 2001, when the ALJ found

that Nelson's impairments had improved and that he was no longer disabled, Nelson was

prescribed a variety of medications.  (*See* App. 721-25.)  The records that were before the ALJ

reflect that in February 2001 he was "[d]oing OK on Depakote meds."  (App. 725.)  The record

also reflects that Nelson was taking other drugs in August 2001 that are also listed on the newer

prescriptions.  (*See, e.g.*, App. 776.)  The copies of prescriptions and prescription drug

information therefore do not tend to show that Nelson's impairments had become more severe

since February 2001.  There is not a reasonable possibility that consideration of these documents

would change the Commissioner's decision.  Therefore, they are not material and are not a basis

for remand.

The treatment plans from The Wedge Medical Center dated February 8, 2007 and

October 3, 2007 are also immaterial.  They list Nelson's mental health treatment goals and report

his continued improvement.  They also reflect a GAF score of 59, the same score on which the

ALJ relied in finding Nelson had sufficiently improved so that he was no longer disabled as of

February 1, 2001.  (*See* App. 618.)  Therefore, there is not a reasonable possibility that

consideration of these treatment plans would change the outcome of the Commissioner's

decision, and these documents are not a basis for remand.

The reports of Nelson's condition and care by Barry Wahner, a chiropractor, dated May

20, 2005 and May 14, 2007, opine that Nelson is permanently disabled.  These documents are

also immaterial.  In a disability determination, "a chiropractor's opinion is not 'an acceptable

medical source' entitled to controlling weight."  *Hartranft*, 181 F.3d at 361 (quoting 20 C.F.R. §

416.913).  No licensed physician or other "acceptable medical source" opined that Nelson's back

and knee problems prevent him from working, although the record reveals that Nelson was

treated by licensed physicians for his back and knee problems.  (*See, e.g.*, App. 182-87, 228-29,

767.)  Given the absence of evidence from an "acceptable medical source" corroborating the

chiropractor's opinion, there is no reasonable possibility that the new evidence would have

changed the outcome of the ALJ's decision.  Thus, the chiropractor's reports dated May 20, 2005

and May 14, 2007 are not a basis for remand.

The pulmonary function analysis dated November 30, 2004 and accompanying "Patient

Follow-Up & PCP Fax Communique" are also immaterial.  The doctor who signed the report,

Dr. Charles R. Egoville, noted that the analysis showed "[s]evere restrictive ventilatory

impairment similar to study of 6/03 but with improved diffusion capacity."  The same physician

noted on the "Patient Follow-Up & PCP Fax Communique" that Nelson's lung problems were

"stable" with "no progression."  Dr. Egoville's recommendation was to "continue current

[prescription medications]."  Although an analysis from June 2003 is not in the record, an

analysis from May 13, 2003, by Dr. Egoville, is.  The test results on May 13, 2003 showed

"[m]oderately severe restrictive ventilatory impairment with moderate diffusion abnormality"

that is "[c]onsistent with moderately advanced interstitial pneumonopathy."  (App. 690.)

Because the May 2003 report was before the Commissioner, and because Nelson showed

improved diffusion capacity and no progression of the impairment between May 2003 and

November 2004, I conclude that there is not a reasonable possibility that the new evidence would

have changed the outcome of the ALJ's decision.  Thus, the November 30, 2004 test results and

analysis are not a basis for remand.

      The pulmonary function analysis dated December 8, 2005 is also not a basis for remand

because Nelson has not made "a showing" that it is material.  Nelson has provided only the

pulmonary function analysis without any accompanying interpretation or evaluation by a

physician.  An ALJ may not independently analyze laboratory reports.  *See Ferguson v.*

*Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).  Nelson has provided nothing to this court that

suggests this analysis, unlike the others, demonstrates that he is permanently disabled.

      In sum, of the evidence that Nelson submitted to the court, most is not "new."  Nelson has

not made a showing that the new evidence is material; that is, he has not shown that the there is a

reasonable possibility that the new evidence would have changed the outcome of the

Commissioner's decision.  Therefore, I will not remand the case for consideration of the new

evidence.

      Finally, Nelson also accuses Sutton of "gross negligence" and "malpractice" for failing to

submit certain records of his disability to the ALJ and for failing to appeal.  (Pl.'s Objs. 1, 2.)

These claims are not cognizable on review of the Commissioner's decision because "there is no

principle of effective assistance of counsel in civil cases."  *Slavin v. Comm'r*, 932 F.2d 598, 601

(7th Cir. 1991); *see also Cornett v. Astrue*, 261 F. App'x 644, 651 (5th Cir. 2008) (rejecting a social security claimant's ineffective assistance of counsel claim and noting that "[t]he Supreme Court has never recognized a constitutional right to counsel in Social Security proceedings").[2]  A social security claimant who was represented by counsel of his own choosing cannot at a later time complain that the representation was inadequate.  *See Hettinger v. Richardson*, 365 F. Supp. 1245, 1246 (E.D. Pa. 1973); *Russell ex rel. Russell v. Chater*, 62 F.3d 1421, at *2 (8th Cir. 1995) (unpublished table decision) (holding the social security claimant's argument regarding the ineffective assistance of her retained counsel "not cognizable in this type of action").[3]

For the above reasons, I will overrule Nelson's objections to the magistrate judge's Report and Recommendation on the issues whether the Commissioner's determination that Nelson is not permanently disabled is supported by substantial evidence, whether the case should be remanded for consideration of the additional evidence Nelson submitted to the court, and whether counsel was ineffective for failing to submit certain records and file an appeal.

An appropriate order follows.

---

[2] The ineffective-assistance-of-counsel concept is based on the Sixth Amendment to the U.S. Constitution, which is applicable to "all *criminal* prosecutions" and grants each person the right to "have the Assistance of Counsel for his defence."  U.S. Const. amend. VI (emphasis added).

[3] I note, moreover, that the ALJ's decision as to the closed period before her was fully favorable and that Nelson's appeal before the Appeals Council was considered notwithstanding the fact that Sutton did not file it.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANCIS NELSON,                                    :
    Plaintiff,                   :
                                                   :       CIVIL ACTION
    v.                           :       NO. 07-2622
                                                   :
MICHAEL J. ASTRUE,                                 :
    Commissioner of Social Security :
    Administration, Defendant.   :

## Order

**AND NOW**, this _____ day of August 2008, upon consideration of plaintiff Francis Nelson's Request for Review (Doc. No. 8) and the Commissioner's Response to Request for Review and motion for summary judgment (Doc. No. 9), and after careful and independent review of the magistrate judge's Report and Recommendation (Doc. No. 14) and the plaintiff's objections thereto (Doc. No. 15), it is hereby **ORDERED** that plaintiff's objections are **OVERRULED**. The Report and Recommendation of United States Magistrate Judge Thomas J. Reuter is **APPROVED** and **ADOPTED**. Defendant's motion for summary judgment is **GRANTED**, and judgment is entered affirming the decision of the Commissioner.

_____s/ William H. Yohn Jr._____
    William H. Yohn Jr., Judge